PASSUMPSIC TURNPIKE CO. *vs.* JAMES LANGDON.

The providing clause of the 8th section of the act incorporating the Passumpsic Turnpike Company, gives to all persons residing within eight miles of the gate and within the state, a right to pass the gate, whatever may be their business, and exempts them whether single or united in a company, whether they drive their own teams, or send their servants.

It also exempts their stages and horses, when they drive a stage on the road.

The exemption is a personal exemption to the persons living within the limited distance.

This was an action on the case to recover damages, and also a penalty given by law for breaking down and forcibly passing the toll-gate on said turnpike, near the house of Robert Somers, in Barnet. Plea, the general issue.

The plaintiff gave in evidence the act of incorporation, dated November 7th, 1805, and also read an act in addition thereto, passed November 9th, 1813.

The plaintiff gave evidence tending to prove that the road was completed as early as November, 1811, agreeably to the provisions of the act of incorporation, and accepted by the judges of the supreme court, and that Robert Whitelaw was treasurer.

The plaintiff also gave evidence tending to prove that for three years there had been a toll-gate erected on said road near the dwelling-house of Somers in Barnet, at which toll was taken of passengers, and a sign-board with the rate of toll written thereon, exposed to view; and that Robert Somers 2d was the toll-gatherer, appointed by the corporation to receive toll.

That on the day of the grievance complained of, the defendant came to the gate with a stage coach carrying the public mail, drawn by six horses—that the toll-gatherer demanded toll—that the defendant declined paying any toll, claiming that he had a right to pass toll-free, said Langdon residing within eight miles of the gate, and in this state—that the plaintiff's toll-gatherer refused to open the gate, and upon this the defendant drew the staple, opened the gate, and passed with his team and coach, doing no other or greater damage than was necessary.

The plaintiff offered to prove that said coach and horses belonged to the defendant and one Brewer & Hawes, and that Brewer and Hawes were not present on this occasion, con-

CALEDONIA,
March,
1884.

Passumpsic
Turnpike Co.
vs.
Langdon.

ceding at the same time that said Brewer & Hawes lived within eight miles of the gate, and in this state.

To which testimony the defendant objected, and the same was excluded.

Evidence also was given by the plaintiff tending to prove that said road had been recognized as a turnpike, and that toll had been paid at the gate for more than twenty years. ·

Plaintiff's evidence here closed. Upon which, the court instructed the jury that the plaintiff was not entitled to recover, and that a verdict must pass for the defendant.

To which decision and charge of the court the plaintiff excepted. Exceptions allowed and certified:

*Mr. Fletcher for plaintiff.*—The grant to take toll is in the words following: "*For every four-wheeled pleasure-carriage, drawn by two beasts, — cents ; for each man and horse, — cents ; for all horses, cattle, &c. — cents.*" The proviso is in the words following, to wit: "That nothing in this act shall extend to entitle said corporation to demand or receive toll of any person who shall be passing with his horse or carriage to or from *public worship*, or on militia duty, or with his horse, team or cattle to or from any grist-mill, or saw-mill, *or any other person living within this state or within eight miles of the gate*." The defendant relies on the last clause of the proviso. Every legislative grant is to be construed according to the subject matter of the grant, keeping distinctly in view the ends to be obtained, and the means by which they are to be accomplished. Provisos are restrictive upon the general grant, in the nature of special privileges, and by construction not to be extended beyond the literal, plain and obvious meaning.— They are *stricti juris*.

The property for which the exemption is claimed must be designated. It must be *his* horse, *his* carriage, *his* team, &c. Not the horse, carriages and team of a stranger, nor *his* and a stranger's—not *his* and another's. The terms in the proviso and in the singular, designating the person and the property. Nothing can be taken by construction.

This exemption does not extend to joint owners, as in this case. But a public stage coach, transporting the United States mail and passengers, is not a carriage within the contemplation of the proviso. Carriages there referred to are of a private character, as is manifest by the language, and in the uses de-

CALEDONIA,
March,
1834.

Pussumpsic
Turnpike Co
vs.
Langdon.

signated.   A stage coach is not ordinarily used *to go to public worship—to go to a saw; or grist-mill; nor is it in any wise connected with militia duty.*

The right claimed by the defendant is not within the literal meaning, spirit or equity of the proviso.—15 John. R. 510.—9 do. 356.—7 do. 185.—2 Pick. 538.—2 Vt. R. 512.—6 T. R. 706.

*E. Paddock, contra.*—Grants are classed among contracts, and it is said in 1 Inst. 73, as a requisite to a good grant, that " there must be an agreement to, and acceptance of the thing granted, to him to whom it is made."—Shep. T. 122.

In this case, the grantees asked a grant or right of making a turnpike road, and taking toll of those who should travel on it.   The legislature saw fit to make the grant, but added this restriction or qualification to it, that the corporation " should neither demand or receive toll of any person living within this state, and within eight miles of the gate," which they should erect.   As the corporation did receive the grant with this condition annexed, and acted under it, (Shep. T. 229) they are bound by it, unless it was a void condition or reservation; and this cannot be pretended, as there is nothing in the reservation repugnant to the grant.—Bac. Abr. Grant 1.

The fact that the defendant was not the sole owner of the team, cannot affect the case, inasmuch as the other two owners reside within this state, and within eight miles of the gate; and it can make no difference whether the team was driven by one of the owners, or by all three, or their servant.—*Wooster vs. Van Vechten*, 10 John. 467.   Besides, it was joint property— each owning an undivided share of the whole.

The toll is not a tax upon the team, but upon the user; and a man living within the eight miles, may borrow his horse of one living without the privilege, and pass toll-free; but a person living more than eight miles from the gate, cannot use the team of one within the eight miles, in his own business, and be privileged from paying toll.

Neither can it make any difference in this case, the particular employment of the team, or species of loading upon the carriage: a man entitled to pass himself, may pass his team, if in his own service, without stopping to give in his manifest or bill of lading,

If then the defendant had a right to pass the gate and the

CALEDONIA,
March,
1834.

Passumpsic
Turnpike Co,
vs.
Langdon,

team in question toll-free, he had a right to remove the obstruction, if denied a passage.—*Pingry* vs. *Washburn*, 1 Aik. 264.

Plaintiff's proving the recognition of the road as a turnpike, and that toll had been paid him at the gate for more than twenty years, avails him nothing. He can gain no prescriptive right—his rights are all limited by the statute making the grant. And there was no attempt to prove that this defendant, or his co-partners, had quietly paid toll for twenty years.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The whole question in this case depends on the construction of the providing clause to the eighth section of the act by which the plaintiffs are made a corporation. This clause is as follows:—" That nothing in this act shall extend to entitle said corporation to demand or receive toll of any person who shall be passing with his horse or carriage to or from public worship, or on military duty, or with his horses, teams or cattle, to or from any grist or saw-mill, or any other person living within this state, and within eight miles of said gate." Under the latter clause the defendants claim to be exempt from tolls. The first part exempts any and every person, wherever they may reside, when passing the gate for the purposes therein mentioned. A similar exemption is usually contained in turnpike grants, both in this and other states.

The cases read from Johnson's Reports—the case of *Medford Turnpike Company* vs. *Torrey*, (2 Pick. 538,) and the case of the *Green Mountain Turnpike Company* vs. *Hemmingway*, were decided on clauses in the turnpike grants, similar to the first part of the providing clause in the grant to the plaintiff. It has been considered, that where persons were travelling the road for the purposes mentioned, they were exempt from toll, and might remove the gate if they were prevented from passing; but if they were passing for other purposes, as well as for those mentioned, they were not exempt; and that no fraud or imposition is to be practised on the turnpike corporation. Although the statute incorporating this company speaks in the singular number, and mentions *his* horses, *his* carriage, &c. yet it cannot be doubted that the exemption extends to any firm or co-partnership who are sending *their* horses, teams, or cattle, to or from any grist or saw-mill, nor that it would extend to any person who should send servants or children to mill, or to any firm who should send their servants, or

CALEDONIA,
*March,*
1834.

Passumpsic
Turnpike Co.
*vs.*
Langdon.

the persons in their service to mill, and on that business alone. The case of *Wooster* vs. *Van Vechten,* 10 John. 467, was de-, cided on this principle. In the latter part of the clause or provision, there is a personal exemption from toll in favor of every person living within this state and within eight miles of the gate, to pass and repass at all times, whatever might be their business, and exempts them in all cases when travelling on business, but does not protect them if they attempt wantonly to disturb the toll-gatherer, and pass and repass for no other purpose than to put him to unnecessary trouble. This exemption being a personal privilege, extends to every person and persons within the limited distance, whether single, united as a company, or as joint owners of a team, or horses, or whether passing with their oxen, horses, or those of others. It is unnecessary to consider what would be the effect of a firm or copartnership composed of two or more, some of whom resided within the eight miles, and some beyond. Probably the privilege would be considered as strictly personal, and only exempting the individual partner and his servants, and not the teams, carriages, or servants of the firm. This question, however, does not arise in this case, as all the persons composing the firm were within the limited distance. The exemption cannot be used to defraud or injure the company, any further than they are injured, by the necessary consequences attending and arising from the extensive and unusual exemptions contained in this grant. The persons entitled cannot make use of it to enable others to pass free of toll, & can only claim it themselves when they travel for their own convenience, pleasure, or profit. And when they do thus travel on the turnpike, whether for pleasure or profit—whether they drive a team, or send their servants—whether for transportation of baggage in wagons, or passengers in a stage coach, they may pass the gate exempt from toll. The defendants, in this case, under the exemption contained in the latter part of the providing clause in the eighth section, were exempt from toll, and had a right, under the circumstances detailed in the exceptions, to remove the obstructions occasioned by the gate.

As the plaintiff cannot recover on the facts, it is unnecessary to consider the defects in the declaration and replication, which are pointed out in the argument on the demurrer to the replication to the defendant's second plea in bar.

The judgment of the county court, which was in favor of the defendants, is affirmed.

CALEDONIA,
*March,*
1834.

### NOTE.

In deciding this case, the court connected the case of the plaintiffs against one Balch, who was in the employ of said Langdon and Brewer & Hawes, as driver of their stage coach with the United States mail.